United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 11, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 24-31067 |
| **BRENDA CLARA SEDILLO-SOTO,** | § § | **CHAPTER 13** |
| Debtor. | § § | |
| | § | |
| **FELIPA SANCHEZ,** | § § | |
| Plaintiff, | § § | |
| VS. | § § | **ADVERSARY NO. 24-3217** |
| **BRENDA CLARA SEDILLO-SOTO,** | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION

On October 17, 2024, Felipa Sanchez brought this lawsuit against Brenda Clara Sedillo-Soto, claiming ownership of the real property located at 7402 Amarillo St., Houston, Texas 77020.[1] Felipa Sanchez alleges that her son Macario Gonzalez and his girlfriend Brenda Clara Sedillo-Soto transferred their interest in the property to Felipa Sanchez on February 28, 1994, in exchange for $500, through a document titled "Affidavit of Transfer."[2] Felipa Sanchez further alleges that Brenda Clara Sedillo-Soto tried to move back into the residence in 2020.[3] Felipa Sanchez then brought this lawsuit, claiming she is the true owner of the property through the 1994 transfer and, alternatively, through adverse possession and a claim of equitable title.[4] But Brenda Clara Sedillo-

---

[1] ECF No. 1.
[2] ECF No. 1, at 3.
[3] Trial Tr. Audio Rec., Dec. 3, 2025, at 2:25-27 p.m.
[4] ECF No. 1, at 4-7.

Soto claims she is the legal owner of the property and that the purported 1994 transfer was fraudulent.[5] On December 3, 2025, the Court conducted a one-day trial.

For the reasons stated herein, this Court holds that under (1) Count I – Determination of Interest in Property (11 U.S.C. § 541), the real property located at 7402 Amarillo St., Houston, Texas 77020, is not property of Brenda Clara Sedillo-Soto's bankruptcy estate because Brenda Clara Sedillo-Soto has no interest in the real property; under (2) Count II – Objection to Homestead Exemption (11 U.S.C. § 522), the objection is sustained because the real property is not property of the estate and so the homestead exception does not apply; under (3) Count III – Federal Declaratory Judgment Act (28 U.S.C. §§ 2201-2202), Felipa Sanchez is the owner of the real property and Brenda Clara Sedillo-Soto has no title to, interest in, or lien on the real property because Felipa Sanchez's title from a common source is superior to Brenda Clara Sedillo-Soto's title, and because Felipa Sanchez obtained equitable title to the property; under (4) Count IV – Trespass to Try Title Adverse Possession (10 Year Statute) Claim, Felipa Sanchez failed to prove adverse possession by a preponderance of the evidence because she did not prove she had notorious, hostile, and exclusive possession of the real property; under (5) Count V – Trespass to Try Title Common Source Claim, Felipa Sanchez owns the real property because her title from a common source is superior to Brenda Clara Sedillo-Soto's title; and under (6) Count VI – Trespass to Try Equitable Title Claim and (7) Count VII – Specific Performance, Felipa Sanchez owns the real property because she completed the obligations of the Affidavit of Transfer by paying off the real property.

## I.   Findings of Fact

---

[5] ECF No. 28, at 7.

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 ("*Rule*"), which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

**A. Background**

1. On November 7, 1991, Felipa Sanchez's ("*Ms. Sanchez/Plaintiff*") son Macario Gonzalez ("*Mr. Gonzalez*") and his girlfriend Brenda Clara Sedillo-Soto ("*Ms. Sedillo-Soto/Defendant/Debtor*") purchased the property located at 7402 Amarillo St., Houston, Texas 77020 (the "*Property*") from John and Edith Oehl (the "*Oehls*") through a Contract for Deed ("*Contract for Deed*").[6]

2. The Contract for Deed set a purchase price of $19,500 and required a $4,000 down payment.[7] The Contract for Deed also required Mr. Gonzalez and Ms. Sedillo-Soto to pay the remaining balance in ninety-six monthly installments of $239.33 and to pay property taxes.[8]

3. On March 3, 1993, the Oehls sent Mr. Gonzalez and Ms. Sedillo-Soto a Notice of Default for failure to make payments.[9]

4. A receipt dated February 25, 1994, documents a $500 cash payment from Ms. Sanchez to Ms. Sedillo-Soto.[10] At trial, Ms. Sedillo-Soto admitted signing the receipt.[11]

5. On February 28, 1994, according to Ms. Sanchez, an "Affidavit of Transfer," that purports to transfer the Property from Mr. Gonzalez and Ms. Sedillo-Soto to Ms. Sanchez, was signed by Mr. Gonzalez, Ms. Sedillo-Soto, and Ms. Sanchez, and was notarized.[12] Ms. Sanchez claims that the agreement was that Mr. Gonzalez and Ms. Sedillo-Soto would transfer the Property to Ms. Sanchez in exchange for $500, and Ms. Sanchez would pay the house off, as well as pay the property taxes.[13]

---

[6] ECF No. 37, at 3.
[7] ECF No. 37, at 3.
[8] ECF No. 37, at 3.
[9] ECF No. 37, at 3.
[10] ECF No. 37, at 3.
[11] Trial Tr. Audio Rec., Dec. 3, 2025, at 3:29-31 p.m.
[12] ECF No. 4, at 3; Trial Tr. Audio Rec., Dec. 3, 2025, at 1:56-57 p.m.
[13] ECF No. 4, at 3.

6. On March 2, 1994, Mr. Gonzalez acknowledged in writing his receipt of the first payment of $1,100 from Ms. Sanchez, which was used to purchase two money orders for the house note and pay the 1993 property taxes.[14]

7. In March of 1994, Ms. Sanchez moved into the Property.[15] Ms. Sedillo-Soto had already vacated the Property in 1993.[16] But Ms. Sanchez and Ms. Sedillo-Soto dispute whether Mr. Gonzalez ever moved out.[17]

8. On February 12, 1999, Edith Oehl executed a Special Warranty Deed transferring the Property to Mr. Gonzalez and Ms. Sedillo-Soto.[18] According to Ms. Sedillo-Soto, the Special Warranty Deed has been recorded in the Harris County real property records.[19]

9. According to Ms. Sanchez, in either 2015 or 2016, Mr. Gonzalez moved back into the Property with Ms. Sanchez because he was ill.[20] Mr. Gonzalez passed away on January 26, 2018, due to health complications.[21]

10. According to Ms. Sanchez, Ms. Sedillo-Soto moved back into the Property sometime after the COVID-19 pandemic began, but she is not sure exactly when.[22] Ms. Sanchez stated she told Ms. Sedillo-Soto that she did not have permission to move back in, although Ms. Sedillo-Soto argues that she did have permission to move back in.[23]

11. On May 10, 2022, Ms. Sanchez was injured at work and went to live with her daughter for five months.[24]

12. In October 2022, Ms. Sedillo-Soto signed a Listing Agreement with Keller Williams Houston Central to sell the Property without Ms. Sanchez's permission.[25]

13. On September 11, 2023, Ms. Sanchez filed a lawsuit against Ms. Sedillo-Soto in the 190th Judicial District of Harris County, Texas, (the "*Harris County Court*") asserting a trespass to try title claim.[26]

14. On January 29, 2024, the Harris County Court issued a temporary injunction enjoining Ms. Sedillo-Soto from interfering with Ms. Sanchez's use of the Property.[27]

---

[14] ECF No. 37, at 3.
[15] Trial Tr. Audio Rec., Dec. 3, 2025, at 2:03-04 p.m.
[16] *Id.* at 3:20-21 p.m.
[17] Trial Tr. Audio Rec., Dec. 3, 2025, at 3:22 p.m.
[18] ECF No. 37, at 3.
[19] Trial Tr. Audio Rec., Dec. 3, 2025, at 3:15-17 p.m.
[20] ECF No. 4, at 5.
[21] ECF No. 4, at 5.
[22] Trial Tr. Audio Rec., Dec. 3, 2025, at 2:25-27 p.m.
[23] *Id.*
[24] Trial Tr. Audio Rec., Dec. 3, 2025, at 2:28-32 p.m.
[25] ECF No. 37, at 3.
[26] ECF No. 37, at 4.
[27] ECF No. 37, at 4.

15. On March 8, 2024, Ms. Sedillo-Soto filed for bankruptcy protection under chapter 13 of the Bankruptcy Code initiating the instant bankruptcy case.[28]

16. Ms. Sedillo-Soto testified she lived in the Property until 2024, when the house was damaged in a storm.[29]

17. On October 17, 2024, Ms. Sanchez filed a complaint (the "*Complaint*").[30]

18. On November 4, 2024, Ms. Sanchez filed an amended complaint (the "*Amended Complaint*").[31]

19. On January 6, 2025, Ms. Sedillo-Soto filed an answer (the "*Answer*") to the Amended Complaint.[32]

20. On June 2, 2025, Ms. Sanchez filed a motion for summary judgment ("*Motion for Summary Judgment*").[33]

21. On June 3, 2025, Ms. Sanchez filed an amended motion for summary judgment ("*Amended Motion for Summary Judgment*").[34]

22. On August 7, 2025, Ms. Sedillo-Soto filed a response to the Amended Motion for Summary Judgment ("*Response to the Motion for Summary Judgment*").[35]

23. On August 15, 2025, Ms. Sanchez filed a reply to the Response to the Motion for Summary Judgment (the "*Reply*").[36]

24. On September 9, 2025, this Court issued its "Order Denying Plaintiff's Motion for Summary Judgment."[37]

25. On September 26, 2025, Ms. Sanchez and Ms. Sedillo-Soto filed a joint pre-trial statement ("*Joint Pre-Trial Statement*").[38]

26. On September 30, 2025, Ms. Sanchez and Ms. Sedillo-Soto filed an amended joint pre-trial statement ("*Amended Pre-Trial Statement*").[39]

---

[28] Bankr. ECF No. 1. "Bankr. ECF" refers docket entries made in the Ms. Sedillo-Soto's bankruptcy case, No. 24-31067. Entries made in Case No. 24-3217 shall take the format of ECF No.__.
[29] Trial Tr. Audio Rec., Dec. 3, 2025, at 3:25-27 p.m.
[30] ECF No. 1.
[31] ECF No. 4.
[32] ECF No. 12.
[33] ECF No. 26.
[34] ECF No. 27.
[35] ECF No. 28.
[36] ECF No. 31.
[37] ECF No. 34.
[38] ECF No. 36.
[39] ECF No. 37.

27. On December 3, 2025, the Court conducted a one-day trial and now issues its instant Memorandum Opinion.

## II. Conclusions of Law

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[40] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[41] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate.[42] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[43]

This Court may only hear a case in which venue is proper.[44] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor's bankruptcy case is pending in this Court, and so venue of this proceeding is proper.

### B. Constitutional Authority to Enter a Final Order

---

[40] Order of Reference to Bankruptcy Judges, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[41] 28 U.S.C. § 157(a); *see also* Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[42] *See* 11 U.S.C. § 157(b)(2)(A).
[43] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[44] 28 U.S.C. § 1408.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[45] The complaint pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court concludes that the narrow limitation imposed by *Stern v. Marshall* does not prohibit this Court from entering a final judgment here.[46] Alternatively, this Court has constitutional authority to enter a final judgment because all parties in interest have consented to adjudication of this dispute by this Court.[47] Thus, this Court wields the constitutional authority to enter a final judgment here.

### III.  ANALYSIS

In her Amended Complaint, Plaintiff has alleged seven causes of action plus damages, to wit: (1) Count I – Determination of Interest in Property (11 U.S.C. § 541); (2) Count II – Objection to Homestead Exemption (11 U.S.C. § 522); (3) Count III – Federal Declaratory Judgment Act (28 U.S.C. §§ 2201-2202); (4) Count IV – Trespass to Try Title Adverse Possession (10 Year Statute) Claim; (5) Count V – Trespass to Try Title Common Source Claim; (6) Count VI – Trespass to Try Equitable Title Claim; (7) Count VII – Specific Performance, and damages in the form of pre-judgment interest, post-judgment interest, and attorney's fees. The Court will consider each in turn.

---

[45] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[46] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. B.A.P. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).

[47] ECF No. 4, at 2 (Felipa Sanchez expressly consented to final judgment by this Bankruptcy Court); ECF No. 25 (Brenda Clara Sedillo-Soto expressly consented to final judgment by this Bankruptcy Court); *see also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

**A. Count I – Determination of Interest in Property (11 U.S.C. § 541)**

In Count I, Plaintiff seeks a determination that the Property is not part of Debtor's bankruptcy estate under 11 U.S.C. § 541 due to Plaintiff's alleged superior claim of title. 11 U.S.C. § 541 provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Thus, whether property is part of a bankruptcy estate depends on whether the debtor had an interest in the property on the petition date.[48]

The Texas Property Code provides for the recording of real property transfers and limits the validity of unrecorded instruments as follows:

> (a) A conveyance of real property . . . is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for the record as required by law.
> (b) The unrecorded instrument is binding . . . on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.[49]

Therefore, an earlier title will have priority over a later one, unless the holder of the later title can show they acquired title as a bona fide purchaser, meaning they bought the property "in good faith, for value, and without notice of any third-party claim or interest."[50] "Notice" is "information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired."[51] Furthermore, "an unrecorded conveyance is binding on those who have knowledge of the conveyance."[52]

---

[48] 11 U.S.C. § 541.
[49] Tex. Prop. Code § 13.001 (West 2006).
[50] *Id.*; *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007).
[51] *Fletcher*, 217 S.W.3d, at 758.
[52] *Id.* (citing *Burris v. McDougald,* 832 S.W.2d 707, 709 (Tex. App.—Corpus Christi 1992)).

Here, Defendant did not have an interest in the Property as of the petition date, which was March 8, 2024. In 1994, Defendant transferred the Property to Plaintiff via the Affidavit of Transfer, in exchange for consideration of $500.[53] Defendant contends that she did not sign the Affidavit of Transfer but rather a "blank piece of paper."[54] Defendant, however, has presented no evidence of this whatsoever. After the Affidavit of Transfer was signed, Plaintiff made monthly payments on the Property to her son Mr. Gonzalez.[55] Mr. Gonzalez, in turn, paid the Oehls, and by February of 1999, the Property was paid off.[56] Defendant argues that once the house was paid off, the Oehls transferred the Property to Defendant via a Special Warranty Deed.[57] Defendant, however, was not a bona fide purchaser, because she had notice of the Affidavit of Transfer, as evidenced by her signature on the Affidavit of Transfer.[58] Thus, because Plaintiff had superior title, the purported transfer from the Oehls to Defendant and Mr. Gonzalez via the Special Warranty Deed was invalid.[59]

Therefore, under Texas Property Code § 13.001, Defendant did not have an interest in the Property as of the petition date of March 8, 2024. Thus, under 11 U.S.C. § 541, the Property is not property of Defendant's bankruptcy estate.

**B. Count II – Objection to Homestead Exemption (11 U.S.C. § 522)**

In Count II, Plaintiff objects to Defendant's homestead exemption claim pursuant to 11 U.S.C. § 522(l) and Bankruptcy Rule 4003(b) because Plaintiff alleges that she is the true owner of the Property. 11 U.S.C. § 522(l) provides:

---

[53] ECF No. 4, at 3.
[54] ECF No. 28, at 7.
[55] ECF No. 4, at 11.
[56] *See* ECF No. 4, at 11.
[57] ECF No. 28, at 1.
[58] ECF No. 39-3.
[59] *Fletcher*, 217 S.W.3d, at 758.

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (d)(1) The following property may be exempted under subsection (b)(2) of this section:
>
> The debtor's aggregate interest, not to exceed $15,000 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

Thus, a debtor can exempt their homestead if they own the home and reside in it on the petition date.[60] Here, as explained *supra*,[61] Defendant did not have an interest in the Property on the petition date of March 28, 2024. Therefore, under 11 U.S.C. § 522(l), the homestead exemption is inapplicable because even if Defendant lived in the Property on the petition date, Defendant did not have an interest in the Property. Thus, Plaintiff's objection to the homestead exemption is sustained.

**C. Count III – Federal Declaratory Judgment Act (28 U.S.C. §§ 2201-2202)**

In Count III, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 declaring the rights, status, and legal relations of the parties with respect to the Property. 28 U.S.C. § 2201 provides:

> (a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2202 provides:

---

[60] 11 U.S.C. § 522(l).
[61] *See supra* III.A.

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. The Court can declare the rights of an interested party seeking a declaration.

The party seeking a declaratory judgment under 28 U.S.C. § 2201 has the burden of establishing the existence of an actual case or controversy.[62] Furthermore, "[c]ourts wield great discretion in determining whether to entertain an action under the Federal Declaratory Judgment Act."[63]

Here, Plaintiff seeks a declaration that she is the owner of the Property, that the Property was transferred to her in 1994 via the Affidavit of Transfer, and that she performed all the obligations of the Affidavit of Transfer and Contract for Deed.[64] Defendant, however, claims that she is the sole owner of the Property.[65] Thus, there is an actual controversy between Plaintiff and Defendant. But Plaintiff must still prove that she owns the Property,[66] which the Court will now consider.

**D. Count IV – Trespass to Try Title Adverse Possession (10-Year Statute) Claim**

Plaintiff has brought a trespass to try title action under Texas law. Texas Property Code § 22.001 provides that, "[a] trespass to try title action is the method of determining title to lands, tenements, or other real property." In Texas, a plaintiff can bring a trespass to try title action through adverse possession.[67] It is the plaintiff's burden to establish superior title through adverse

---

[62] *Med. Components, Inc. v. Osiris Med., Inc.*, 226 F. Supp. 3d 753, 761 (W.D. Tex. 2016) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 144 (2007).
[63] *Williams v. Farris (In re Williams)*, Nos. 19-32784, 19-3683, 2021 Bankr. LEXIS 924, at *63 (Bankr. S.D. Tex. Apr. 6, 2021).
[64] ECF No. 4, at 12.
[65] *See generally* ECF No. 28.
[66] *Callan v. Deutsche Bank Tr. Co. Ams.*, 11 F. Supp. 3d 761, 771 (S.D. Tex. 2014).
[67] *Brumley v. McDuff*, 616 S.W.3d 826, 832 (Tex. 2021).

possession by a preponderance of the evidence.[68] The Texas Civil Practice and Remedies Code provides that:

> [A] person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property . . . If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims.[69]

The Texas Civil Practice and Remedies Code defines adverse possession as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person."[70] Furthermore, "[p]ossession must be actual, visible, continuous, notorious, distinct, hostile, and of such as [sic] character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant."[71] Additionally, the plaintiff must prove that the adverse possession was under a "claim of right,"[72] which "means that the entry of the claimant must be with the intent to claim the land as his own, to hold it for himself and such must continue to be the nature of his possession."[73]

If the property owners have a tenancy-in-common relationship, then the plaintiff must also show that they either ousted the co-tenant(s), or repudiated the co-tenancy relationship.[74] A "'tenancy in common' is a tenancy by two or more persons, in equal or unequal undivided shares, where each person has an equal right to possess the whole property, but with no right of survivorship."[75] Therefore, co-tenants are those who have title "in some manner," such as by

---

[68] *United Sav. Ass'n of Tex. v. Villanueva*, 878 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1994).
[69] Tex. Civ. Prac. & Rem. Code §§ 16.026(a), 16.030 (West 2002).
[70] Tex. Civ. Prac. & Rem. Code § 16.021 (West 2002).
[71] *Kazmir v. Benavides*, 288 S.W.3d 557, 560-61 (Tex. App.—Houston [14th Dist.] 2009); *Luminant Mining Co., L.L.C. v. PakeyBey*, 14 F.4th 375, 380 (5th Cir. 2021).
[72] *Id.* at 561.
[73] *Myers v. Wright*, 224 S.W.3d 466, 469 (Tex. App. 2007) (citing *Boyle v. Burk*, 749 S.W.2d 264, 266 (Tex. App.—Fort Worth 1988, writ denied)).
[74] *Frazier v. Donovan*, 420 S.W.3d 463, 467 (Tex. App.—Tyler 2014) (citing *Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).
[75] *Id.*

transfer, inheritance, or some other means.[76] Furthermore, co-tenants have the right to be in possession of real property in which he or she owns an interest.[77]

Ouster can be accomplished through actual or constructive notice to the co-tenant.[78] The Texas Supreme Court held, "constructive notice will be presumed where the facts show . . . that the [plaintiff's] adverse occupancy and claim of title to the land . . . has been long continued, open, notorious, exclusive and inconsistent with the existence of title in the respondent."[79]

Here, Plaintiff claims she had actual and visible appropriation of the Property because she lived there continuously for about twenty-five years, from 1994 to 2020.[80] Defendant does not dispute that Plaintiff lived in the Property from 1994 to 2020.[81] Thus, from 1994 to 2020, Plaintiff had actual and visible appropriation of the Property and lived there continuously.

Plaintiff also asserts that her possession was notorious, hostile, exclusive, and under a claim of right because she made significant improvements to the Property "including replacing the boiler, remodeling the bathroom, installing a new tub, repairing the roof, building a porch, installing new windows in the living room and kitchen. Plaintiff [also] maintained the lawn, planted flowers, and used the patio, and regularly invited guests."[82] But at trial, Defendant argued that Plaintiff did not repair the Property's roof or floor.[83] Plaintiff failed to present any evidence at trial that she actually did make improvements or maintain the Property. Thus, Plaintiff has failed to prove notorious, hostile, and exclusive possession of the Property.

---

[76] *See Reed v. Turner*, 489 S.W.2d 373, 381 (Tex. Civ. App.—Tyler 1972).
[77] *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963).
[78] *Frazier*, 420 S.W.3d at 467.
[79] *Vasquez v. Meaders*, 291 S.W. 2d 926, 928 (Tex. 1956).
[80] ECF No. 4, at 9; *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 193 (Tex. 2003).
[81] *See* Tr. Transcript Audio Rec., Dec. 3, 2025, at 3:27-28 p.m.
[82] ECF No. 26, at 12; *Estrada v. Cheshire*, 470 S.W.3d 109, 126 (Tex. App. 2015); *Myers v. Wright*, 224 S.W.3d at 469.
[83] ECF No. 12, at 3; Tr. Transcript Audio Rec., Dec. 3, 2025, at 3:21-22 p.m.

Defendant also argues that Plaintiff's possession of the Property was not under a claim of right.[84] According to Defendant, the 151st Judicial District Court of Harris County signed an order (the "*State Court Order*") on August 5, 2023, finding that the 1994 Affidavit of Transfer is not a valid lien and was not created with the consent of Defendant.[85] But Plaintiff argues that the State Court Order was actually referring to a document titled "Affidavit Claiming a Lien" not the Affidavit of Transfer.[86] The State Court Order states it is referring to "documentation or [an] instrument attached to the motion," but the State Court Order does not specify what documentation or motion it is referring to.[87] Defendant also failed to provide any evidence showing what document the State Court Order refers to. Therefore, based on the evidence before the Court, Plaintiff has a claim of right to the Property due to her long and continuous possession of the Property.[88]

Defendant also contends that Plaintiff failed to oust Defendant because Plaintiff did not give her actual or constructive notice.[89] But here, Defendant misses a key threshold issue—she must prove that she and Plaintiff were in a tenancy in common relationship to begin with.[90] As explained *supra*,[91] in 1994, Plaintiff became the sole owner of the Property when Defendant transferred it to Plaintiff in exchange for consideration of $500. Therefore, there can be no tenancy in common relationship because Defendant does not have an interest in the Property. If Defendant cannot establish that she was a co-tenant in possession, then Plaintiff does not have to prove ouster.[92]

---

[84] ECF No. 28, at 2.
[85] ECF No. 28, at 2.
[86] ECF No. 27, at 5.
[87] ECF No. 28-5.
[88] *Myers v. Wright*, 224 S.W.3d at 469.
[89] ECF No. 28, at 5.
[90] *Frazier*, 420 S.W.3d at 467.
[91] *See supra* III.A.
[92] *Frazier*, 420 S.W.3d at 467.

Ultimately, however, because Plaintiff failed to prove that her possession was hostile and notorious, the Court holds that under Sections 16.021, 16.026(a), and 16.030 of the Texas Civil Practice and Remedies Code, Plaintiff has failed to meet her burden to show by a preponderance of the evidence that she owns the Property through adverse possession.

**E. Count V – Trespass to Try Title Common Source Claim**

Plaintiff has shown that she has superior title from a common source.[93] To prove superior title from a common source, the plaintiff must: (1) connect the plaintiff's title to a common source by a complete chain of title; (2) connect defendant's title to the same source, and; (3) show that the plaintiff's title is superior.[94] When the defendant transfers title to the plaintiff directly, the defendant serves as the common source.[95] Furthermore, an earlier title will be superior to a later one, unless the holder of the later title can show they acquired title as a bona fide purchaser, meaning they bought the property "in good faith, for value, and without notice of any third-party claim and without notice of the earlier existing interest."[96]

Here, Plaintiff received title from Defendant via the Affidavit of Transfer in 1994.[97] Thus, Defendant serves as the common source.[98] Furthermore, Plaintiff's 1994 title is superior to Defendant's title obtained in 1999 from the Oehls via the Special Warranty Deed[99] because Plaintiff obtained her title earlier than Defendant did.[100] Defendant was not a bona fide purchaser because Defendant had notice of the Affidavit of Transfer, as evidenced by Defendant's signature

---

[93] *See Rogers v. Ricane Enters.*, 884 S.W.2d 763, 768 (Tex. 1994).
[94] *Id.*
[95] *Am. Saving & Loan Ass'n of Hous. v. Musick*, 517 S.W.2d 627, 630 (Tex. Civ. App.—Houston [14th Dist.] 1974).
[96] *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007).
[97] ECF No. 28, at 8.
[98] *Musick*, 51 S.W.2d at 630.
[99] ECF No. 37, at 3.
[100] *Fletcher*, 217 S.W.3d at 758.

on the Affidavit of Transfer.[101] Thus, under Texas law,[102] Plaintiff has superior title from a common source and so this Court holds that Plaintiff is the owner of the Property.

### F. Count VI – Trespass to Try Equitable Title Claim

Plaintiff has shown that she has equitable title to the Property.[103] "Equitable title may be shown when the plaintiff proves that he has paid the purchase price and fully performed the obligations under the contract."[104] Upon such performance, the plaintiff becomes vested with an equitable title to the property.[105]

Here, Plaintiff presented receipts which proved that she paid the purchase price of $500 to Defendant and then made monthly payments of $239 thereafter.[106] Although Defendant argued at trial that she never received the $500, Plaintiff presented a receipt for $500 and Defendant admitted that she signed the receipt.[107] Thus, Plaintiff fulfilled her obligations under the Affidavit of Transfer.[108] Therefore, under Texas law,[109] Plaintiff has made a valid equitable title claim and so this Court holds that Plaintiff is the owner of the Property.

### G. Count VII – Specific Performance

Under Texas law, a court may order specific performance as an equitable remedy when a party has fully performed their obligations under a contract:

> The equitable remedy of specific performance may be awarded upon a showing of breach of contract. However, a party seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless

---

[101] ECF No. 39-3, at 2.
[102] *Fletcher*, 217 S.W.3d at 758; *Musick*, 51 S.W.2d at 630.
[103] *See Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *White v. Hughs*, 867 S.W.2d 846, 849 (Tex. App.—Texarkana 1993, no writ).
[104] *Id.*
[105] *Id.*
[106] ECF No. 39-4, ECF No. 39-5, ECF No. 39-6.
[107] *See* ECF No. 28, at 2, 4; Trial Tr. Audio Rec., Dec. 3, 2025, at 3:29-31 p.m.
[108] ECF No. 4, at 11; ECF No. 39-4, ECF No. 39-5, ECF No. 39-6.
[109] *See Cullins*, 171 S.W.3d at 533.

excused by the defendant's breach or repudiation and (2) the readiness, willingness, and ability to perform at relevant times.[110]

Here, Plaintiff completed her obligations under the Affidavit of Transfer by paying Defendant and Mr. Gonzalez $500, paying monthly payments of $239, and paying the back taxes owed on the Property.[111] Defendant again argues she did not sign the Affidavit of Transfer,[112] but presents no evidence whatsoever to support her contention. Therefore, Plaintiff has proven that specific performance of the Affidavit of Transfer should be ordered as an equitable remedy, and that Plaintiff is entitled to the Property. Thus, under Texas law,[113] Plaintiff is entitled to specific performance and so this Court holds that Plaintiff is the owner of the Property.

**H. Damages**

Plaintiff also seeks damages, including pre-judgment interest, post-judgment interest, and attorney's fees.[114] Rule 54(d)(2)(B)(ii) requires the movant to include in their motion the "statute, rule, or other grounds" that entitles the movant to attorney's fees.[115] In federal declaratory judgment proceedings, attorney's fees are granted only when controlling substantive law permits recovery.[116] The Federal Declaratory Judgment Act (the "*Act*") does not create a cause of action for attorney's fees.[117] Under Texas law, the "American Rule" applies, which mandates that each party "pay their own attorney's fees."[118] An exception arises "when specific authority granted by

---

[110] *Smith v. DASS, Inc.*, 283 S.W.3d 537, 542 (Tex. App.—Dallas 2009, no pet.) (citing *Stafford v. S. Vanity Mag., Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007)).
[111] ECF No. 39-4, ECF No. 39-5, ECF No. 39-6.
[112] ECF No. 28, at 4.
[113] *Smith*, 283 S.W.3d at 542.
[114] ECF No. 4, at 12.
[115] *JFMPC, LLC v. JTL JV, LLC (In re Cosas Claras, LP)*, Nos. 10-50528-CAG, 22-05049-CAG, 2024 Bankr. LEXIS 1543, at *12 (Bankr. W.D. Tex. July 1, 2024).
[116] *Id.* at *10 (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).
[117] *Id.*; 28 U.S.C. § 2202.
[118] *JFMPC*, 2024 Bankr. LEXIS 1543, at *10 (citing *Rodriguez v. Safeco Ins. Co. of Ind.*, 684 S.W.3d 789, 796 (Tex. 2024)).

statute or contract . . . states otherwise."[119] Furthermore, attorney's fees under a trespass to try title claim are unrecoverable.[120]

Here, Plaintiff requests pre-judgment interest, post-judgment interest, and attorney's fees, but fails to specify an amount.[121] Plaintiff also fails to meet Rule 54(d)(2)(B)(ii)'s requirement that the movant specify the statute, authority, or grounds under which they should recover attorney's fees. Plaintiff brings a claim for ownership of the Property under the Act, but the Act does not provide the movant with a cause of action for attorney's fees.[122] Plaintiff also claims ownership of the Property under Texas law via title from a common source, equitable title, adverse possession, and specific performance.[123] But under Texas law, the American Rule applies, which provides that parties must pay their own attorney's fees.[124] There is an exception to the American Rule if a party cites to an authority that gives the movant the right to collect attorney's fees,[125] but Plaintiff has failed to cite to any such authority. Furthermore, the Fifth Circuit Court of Appeals has held that attorney's fees are not recoverable in trespass to try title actions.[126]

Therefore, because Plaintiff has failed to specify what amount in pre-judgment interest, post-judgment interest, and attorney's fees she is requesting, why she should receive that amount, and under what authority she should receive those damages, none are awarded.

Thus, for the reasons stated herein, this Court holds that under (1) Count I – Determination of Interest in Property (11 U.S.C. § 541), the real property located at 7402 Amarillo St., Houston, Texas 77020, is not property of Brenda Clara Sedillo-Soto's bankruptcy estate because Brenda

---

[119] *Id.* at *11 (citing *Schwertner Backhoe Servs. v. Kirk (In re Kirk)*, 525 B.R. 325, 330 (Bankr. W.D. Tex. 2015)).
[120] *See Garza v. Coates Energy Tr. (In re Garza)*, 90 F. App'x 730, 733 (5th Cir. 2004) (explaining that attorney's fees are not recoverable in trespass to try title actions).
[121] ECF No. 4, at 12.
[122] *JFMPC*, 2024 Bankr. LEXIS 1543, at *12 (citing *Utica*, 138 F.3d at 210).
[123] *See generally* ECF No. 4.
[124] *Id.* at *10 (citing *Rodriguez*, 684 S.W.3d at 79).
[125] *Id.* at *11 (citing *Schwertner*, 525 B.R. at 330).
[126] *Garza*, 90 F. App'x at 733.

Clara Sedillo-Soto has no interest in the real property; under (2) Count II – Objection to Homestead Exemption (11 U.S.C. § 522), the objection is sustained because the real property is not property of the estate and so the homestead exception does not apply; under (3) Count III – Federal Declaratory Judgment Act (28 U.S.C. §§ 2201-2202), Felipa Sanchez is the owner of the real property and Brenda Clara Sedillo-Soto has no title to, interest in, or lien on the real property because Felipa Sanchez's title from a common source is superior to Brenda Clara Sedillo-Soto's title, and because Felipa Sanchez obtained equitable title to the property; under (4) Count IV – Trespass to Try Title Adverse Possession (10 Year Statute) Claim, Felipa Sanchez failed to prove adverse possession by a preponderance of the evidence because she did not prove she had notorious, hostile, and exclusive possession of the real property; under (5) Count V – Trespass to Try Title Common Source Claim, Felipa Sanchez owns the real property because her title from a common source is superior to Brenda Clara Sedillo-Soto's title; and under (6) Count VI – Trespass to Try Equitable Title Claim and (7) Count VII – Specific Performance, Felipa Sanchez owns the real property because she completed the obligations of the Affidavit of Transfer by paying off the real property.

### IV. CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Wednesday, March 11, 2026**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**